IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH BLANDING | : CIVIL ACTION |
| | : |
| | : JURY TRIAL DEMANDED |
| vs. | : |
| | : NO.: 2:18-CV-05331-TJS |
| NATIONAL RAILROAD PASSENGER | : |
| CORPORATION (AMTRAK) | : |
| | : |

**PLAINTIFF'S PRETRIAL MEMORANDUM**

Plaintiff Keith Blanding, by his attorneys Coffey Kaye Myers & Olley, hereby submits the following Pretrial Memorandum in advance of the Pretrial Conference scheduled to take place before the Honorable Timothy Savage on September 24, 2019 at 10:00 a.m.

**I.   STATEMENT OF THE ACTION AND JURISDICTION**

This claim is brought pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51, et seq., in which plaintiff Keith Blanding seeks damages for disabling cervical spinal injuries which occurred on July 17, 2018 when he was injured while working as an electrician for defendant Amtrak. Plaintiff seeks damages for those disabling injuries and his resulting loss of wages, loss of future earning capacity and past and future physical and emotional pain and suffering. This Honorable Court has jurisdiction over this action pursuant to federal question jurisdiction, 29 U.S.C. § 1331 and the Federal Employers' Liability Act, 45 U.S.C. § 56.

**II.  STATEMENT OF THE FACTS**

Keith Blanding was injured on July 17, 2018 at approximately 10:00 a.m. while he was working as an electrician at Amtrak's locomotive shop in Wilmington, Delaware. On that date, Mr. Blanding was 55 years old and had been employed with Amtrak for 10 years as an electrician. His annual earnings with Amtrak were approximately $60,000.00.

Mr. Blanding was situated in a pit below a locomotive and was in the process of decabbing the locomotive which meant that all of the electronic components between the wheels of the locomotive and the body of the locomotive had to be disconnected. In order to do so, Mr. Blanding was standing on a four legged metal locomotive roof rack support which Amtrak management permitted its employees to utilize as step stools. Mr. Blanding was standing on the roof rack support and using a four inch ratchet while being awkwardly positioned and attempting to remove a bolt from an upper speed sensor cable beneath the locomotive. As he was reaching and extending his right arm in the confined space while still trying to stand on the roof rack support, he wrenched and twisted his upper body causing him to feel a "pop" in his neck and immediate pain shooting down his right arm. He reported the incident and then underwent significant treatment, physical therapy and injections for a cervical herniated disc and resulting cervical radiculopathy. Ultimately, he underwent a two level fusion surgery performed by Dr. Lee Buono in March, 2019 at the levels of C5 through C7. Mr. Blanding is still receiving post-operative physical therapy and his surgeon has opined that he is permanently disabled from returning to his prior position as an electrician with Amtrak.

Prior to the incident, Mr. Blanding and his co-worker had complained about the awkward positioning of the task and had inquired as to why the speed sensor cable could not be removed by way of accessing a lower bolt. They were told that they had to follow this particular procedure. Following the incident, an Amtrak investigation committee concluded that the incident resulted from overextension and a contributing factor was "ergonomics" due to overstretching. At the time of the incident, the locomotive shop was equipped with overhead cranes which could have lifted the locomotive up in the air which would have provided less of a confined space for Mr. Blanding to perform the task. In addition, Amtrak utilizes carjacks at its Bear, Delaware location but the jacks are not utilized in Wilmington. Had such jacks been available in Wilmington, they could

have been utilized to lift the locomotive from both sides thereby permitting Mr. Blanding to access the area without having to work in a confined space. Amtrak also utilized step stools with safer, legs with rubber soles at Bear but not at the Wilmington shops.

Plaintiff has retained Dr. Stephen Wilcox as his liability expert. Dr. Wilcox is trained in both human factors and ergonomics. Dr. Wilcox conducted a site inspection and also reviewed all of the relevant documents in this case together with the videotape deposition of Amtrak supervisor, William Zajak, who admitted that Amtrak had absolutely no ergonomics program whatsoever to analyze the type of task that Mr. Blanding was performing to make sure it was safe. Dr. Wilcox has prepared a comprehensive report in which he cites to numerous standards, including those prepared by the National Institute of Occupational Safety and Health, which specifically mandate that full extension of the arms above the head is a task to be avoided. In addition, Dr. Wilcox reviewed Amtrak's own internal safety training plan documents which specifically require adequate clearance and accessibility in performing such a task. It is Dr. Wilcox's opinion that the task that Mr. Blanding was performing was unsafe and contained a number of conditions known to be injury-causing. It is also his opinion that despite the fact that Amtrak generated extensive material about ergonomic job safety 20 years before the incident, Amtrak did not apply such research and materials to make this particular task safer. Finally, Dr. Wilcox is of the opinion that Amtrak failed to provide a safe workplace in permitting locomotive roof supports to be used as stools and in failing to utilize the overhead crane or carjacks to elevate the locomotives.

Mr. Blanding was initially evaluated at an occupational health facility and then came under the care of his primary care physician in New Jersey who referred him for a cervical MRI that was performed 12 days after the incident and confirmed a large herniated disc with nerve root compression at the level of C6. In addition, he was ultimately referred to a pain management specialist who performed several cervical epidural injections which did not provide any benefit.

Mr. Blanding's pain was so severe that he had to go to the emergency room on two separate occasions during his treatment. His primary care physician ultimately referred him to Dr. Lee Buono, a neurosurgeon, who performed a multi-level discectomy and a two level cervical fusion surgery such that Mr. Blanding's cervical spine is now fused from the level of C5 through C7. While Dr. Buono's practice does not permit him to prepare expert narrative reports or to testify, he has set forth his opinions in the most recent treatment note that Mr. Blanding is permanently disabled from returning to his prior position with Amtrak as an electrician and that the disc herniation and resulting cervical radiculopathy were caused by the subject incident.

Mr. Blanding has been independently evaluated by Dr. Guy Freid, the Chief of Medical Officer at Magee Rehabilitation Hospital in Philadelphia. Dr. Fried conducted an extensive record review as well as an independent medical evaluation on May 3, 2019. It is Dr. Fried's opinion that the cervical disc herniation was caused by the subject incident necessitating the two level fusion surgery. Dr. Fried also discussed Mr. Blanding's work as an electrician with him at length and also reviewed the Amtrak job description for that position. It is Dr. Fried's opinion that Mr. Blanding is permanently disabled from returning to work for Amtrak in that position.

## III. STATEMENT OF DAMAGES

Several weeks after the incident, Mr. Blanding participated in Amtrak's Right Care Day One program and took a transitional sedentary work assignment at 30th Street Station. However, that assignment only lasted until the beginning of December, 2018 and since then, Mr. Blanding has requested an ADA accommodation from Amtrak and has also applied for alternative positions with Amtrak. However, as of this date, he has not been given any accommodation; nor has he been granted any interviews.

Plaintiff's vocational expert is Irene Mendelsohn. Ms. Mendelsohn conducted a vocational assessment and met with Mr. Blanding in February and has had multiple telephone conferences

4

with him since his surgery. She also conducted vocational testing. Mr. Blanding is a high school graduate and he took several courses in electrical engineering at both Temple University and East Stroudsburg University but never obtained a degree. He was a C student. Prior to working for Amtrak, he was an electrician with SEPTA for 10 years and his position with Amtrak required him to be able to lift 50 pounds but he would often lift components weighing far more than that. With regards to his test results, Mr. Blanding basically performed at a high school equivalent level. With regards to alternative work as an electrician in the residential area, Mr. Blanding has not performed that type of work in many years and is it certainly not sedentary. In fact, Mr. Blanding was working an alternative second position as an electrician but was laid off from that prior to his surgery.

It is Ms. Mendelsohn's opinion that Mr. Blanding is now relegated to clerical type positions with alternative annual earnings of approximately $30,500.00.

Plaintiff's economic expert is Andrew Verzilli MBA. It is Mr. Verzilli's opinion that Mr. Blanding's economic damages, assuming retirement between sixty-seven and sixty-eight, are in a range between $431,685.00 and $466,454.00.

The aforementioned economic losses do not include the value of Mr. Blanding's future loss of pension with the railroad; nor does it include the cost of his future medical care.

Mr. Blanding continues to remain under the care of his surgeon, Dr. Lee Buono, who has not formally released him to perform any employment. He is continuing to receive physical therapy three times a week. He may require additional spinal injections for his condition and since the incident, he has undergone significant treatment consisting of physical therapy, imaging studies, EMG testing, several injections and a two-level cervical fusion surgery performed on March 28, 2019. He has permanent residual pain and weakness in the cervical spine and is now at an increased risk of further deterioration of his cervical spine given the fact that the bottom two levels of his cervical spine have been fused.

5

Accordingly, Mr. Blanding has a significant claim for past and future physical and emotional pain and suffering associated with his significant and disabling injuries above and beyond his economic damages.

## IV. PLAINTIFF'S LIST OF TRIAL WITNESSES

### A. Liability Witnesses

1. Keith Blanding
   1000 W. Atlantic Ave.
   Apt. 53
   Laurel Spring, NJ 08021

   Mr. Blanding is the plaintiff who will testify on the issues of liability and damages.

2. Colby Mills-King
   1000 W. Atlantic Ave.
   Apt. 53
   Laurel Spring, NJ 08021

   Mr. King is the plaintiff's son and may testify on the issue of damages.

3. William Zajac
   c/o Amtrak
   Wilmington, DE

   Mr. Zajac was the general foreman in the Wilmington shop at the time of the incident and previously gave a videotaped deposition. Mr. Zajac may testify on the issues of liability and plaintiff's injuries.

4. Otis Isaacs
   c/o Amtrak
   Wilmington, DE

   Mr. Isaacs was the lead electrician at the time of the incident and may testify regarding the issue of liability and the plaintiff's injuries.

5. John DeCino
   c/o Amtrak
   Wilmington, DE

   Mr. DeCino was plaintiff's foreman at the time of the incident and he may testify regarding the investigation reports that he completed.

6. John McDade
   4641 Aston Mills Rd
   Aston, PA 19014

   Mr. McDade was an Amtrak car machinist working at Amtrak's Wilmington shops at the time of the plaintiff's incident and may testify regarding the general working conditions and Amtrak policies and procedures in the Wilmington shop at the time of the incident.

7. Miguel Colon
   834 Old Forge Road
   Oxford, PA 19363

   Mr. Colon was an Amtrak car repairman working at Amtrak's Wilmington shops at the time of the plaintiff's incident and may testify regarding the general working conditions and Amtrak policies and procedures in the Wilmington shop at the time of the incident.

8. Paul Allen
   c/o Amtrak
   Wilmington, DE

   Mr. Allen was a safety supervisor at the time of the incident and a member of the investigation committee that investigated the incident. He may testify regarding the investigation documents that were prepared and the investigation results and the root cause of the injury.

9. Marcus Suhr
   c/o Amtrak
   Wilmington, DE

   Mr. Suhr was a safety supervisor at the time of the incident and a member of the investigation committee that investigated the incident. He may testify regarding the investigation documents that were prepared and the investigation results and the root cause of the injury.

10. Andrew Zuckerman
    c/o Amtrak
    Wilmington, DE

    Mr. Zuckerman was a safety supervisor at the time of the incident and a member of the investigation committee that investigated the incident. He may testify regarding the investigation documents that were prepared and the investigation results and the root cause of the injury.

11. Thomas Montgomery
    Senior Claims Specialist
    AMTRAK
    2955 Market Street, 3rd Fl. North
    Box 26
    Philadelphia, PA 19104

    Mr. Montgomery is the assigned claims agent. He may be called as if on cross examination to testify regarding the recorded statement of the plaintiff that he took, the decisions that were made regarding Mr. Blanding's medical treatment and the defendant's answers to plaintiff's discovery requests which he verified.

**B. Expert Witnesses**

1.  Dr. Lee Buono, M.D.
    Capital Institute for Neurosciences
    Two Capital Way
    Suite 456
    Pennington, NJ 08534

    Dr. Buono is the plaintiff's treating surgeon who may testify by way of videotape on the issues of causation and damages.

2.  Guy Fried, M.D.
    Chief Medical Officer
    Magee Rehabilitation Hospital
    1513 Race Street
    Philadelphia, PA 19102

    Dr. Fried is the Chief Medical Officer at Magee Rehabilitation Hospital as well as a professor at Jefferson Medical College. He is board certified in physical medicine and rehabilitation as well as pain medicine and electrodiagnostic medicine. He will testify live at the time of trial on the issues of causation and damages as well as his review of Mr. Blanding's medical records, and his opinions regarding Mr. Blanding's permanent disability, limitations and functional restrictions.

3.  Ms. Irene Mendelsohn
    1226 Woodbine Avenue
    Penn Valley, PA 19072

    Ms. Mendelsohn is a vocational rehabilitation counselor and a vocational expert who will testify regarding Mr. Blanding's vocational limitations resulting from his injuries and disability as well as the residual earnings available in alternative employment positions that Mr. Blanding may be able to possibly hold.

    4. Andrew Verzilli, M.B.A.
       Verzilli Consulting
       411 North Broad Street
       Lansdale, PA  19446

Mr. Verzilli is plaintiff's economic expert who will testify regarding plaintiff's economic damages and specifically, the value of his loss of earnings and future loss of earning capacity.

*Plaintiff reserves the right to call any witness identified by the defendant as well as rebuttal witnesses.*

## V. PLAINTIFF'S LIST OF TRIAL EXHIBITS

| Exhibit | Description |
|---|---|
| P-1a – P-1h | Photographs of Accident Location |
| P-2 | Employee Personal Statement |
| P-3 | Handwritten Employee Injury Report |
| P-4 | Typewritten Employee Injury Report |
| P-5 | Amtrak Medical Information and Consent Form |
| P-6 | Amtrak Investigation Report |
| P-7 | Amtrak Executive Summary |
| P-8 | Defendant's Responses to Plaintiff's Interrogatories |
| P-9 | Defendant's Responses to Plaintiff's Supplemental Request for Production of Documents with Attachments |
| P-10 | Deposition of William Zajac and Exhibits |
| P-11 | Amtrak Ergonomics at Work Training Materials |
| P-12 | Elements of Ergonomics Programs |
| P-13 | Amtrak Steps to Develop a Safety Training Plan |
| P-14 | Amtrak Weekly Safety Focus |
| P-15 | Amtrak Site Visit Summary September, 2018 |
| P-16 | Curriculum Vitae Stephen Wilcox Ph. D |

| | |
|---|---|
| P-17 | Expert Report of Dr. Wilcox |
| P-17a | Supplemental Report of Dr. Wilcox |
| P-18 | Records of Omega Medical Center |
| P-19 | Records of South Jersey Orthopedic Associates |
| P-19a | Cervical MRI Report dated July 29, 2018 |
| P-20 | Physical Therapy Records |
| P-21 | Records and Reports of Dr. Eneanya |
| P-22 | Records and Reports of Dr. Buono |
| P-23 | Amtrak Electrician Job Description. |
| P-24 | Curriculum Vitae of Dr. Buono |
| P-25 | Deposition Transcript of Dr. Buono |
| P-26 | DVD of Dr. Buono's Deposition |
| P-27 | Curriculum Vitae of Guy Fried, M.D. |
| P-28 | Expert Report of Dr. Fried dated May 20, 2019 |
| P-29 | Plaintiff's Earnings and Fringe Benefit Records |
| P-30 | Letter of Michele MacDonald dated October 5, 2018 |
| P-31 | Letter from Nicole McCleaf to Plaintiff dated January 30, 2019 |
| P-32 | Plaintiff's Job Applications and Responses |
| P-33 | Curriculum Vitae of Irene C. Mendelsohn |
| P-34 | Expert Report of Ms. Mendelsohn dated June 10, 2019. |
| P-35 | Curriculum Vitae of Andrew Verzilli M.B.A. |
| P-36 | Expert of Mr. Verzilli dated June 18, 2019 |

*Plaintiff reserves the right to introduce any exhibit identified by the defendant*

## VI.     PLAINTIFF'S DEPOSITION DESIGNATIONS

With regards to the videotape trial deposition of plaintiff's treating surgeon, Dr. Lee Buono, plaintiff reserves the right to introduce the entirety of the deposition into evidence. In addition, plaintiff intends to either read into evidence or introduce into evidence by video deposition the following portions of the deposition of William Zajac:

Page 9, line 4 through page 9, line 16;

Page 9, line 22 through page 10, line 2;

Page 10, line 12 through page 10, line 14;

Page 10, line 17 through page 10, line 22;

Page 11, line 5 through page 11, line 12;

Page 12, line 12 through page 12, line 14;

Page 12, line 21 through page 12, line 24;

Page 17, line 22 through page 18, line 3;

Page 19, line 15 through page 20, line 6;

Page 20, line 21 through page 21, line 1;

Page 22, line 11 through page 22, line 16;

Page 23, line 17 through page 23, line 20;

Page 25, line 23 through page 26, line 8;

Page 27, line 19 through page 27, line 23;

Page 28, line 18 through page 28, line 24;

Page 29, line 21 through page 30, line 2;

Page 30, line 8 through page 30, line 18;

Page 30, line 23 through page 31, line 4;

Page 31, line 24 through page 32, line 8;

Page 32, line 22 through page 33, line 6;

Page 34, line 22 through page 35, line 7;

Page 35, line 23 through page 36, line 3;

Page 39, line 23 through page 40, line 13;

Page 40, line 20 through page 41, line 2;

Page 46, line 22 through page 47, line 6;

Page 47, line 10 through page 47, line 13;

Page 48, line 6 through page 49, line 2;

Page 53, line 4 through page 53, line 9;

Page 53, line 18 through page 54, line 8;

Page 54, line 22 through page 54, line 24;

Page 56, line 4 through page 56, line 12;

Page 28, line 2 through page 58, line 11;

Page 58, line 18 through page 58, line 23;

Page 59, line 10 through page 59, line 17;

Page 64, line 10 through page 64, line 15;

Page 65, line 24 through page 66, line 2;

Page 67, line 19 through page 67, line 24;

Page 68, line 13 through page 69, line 7;

Page 73, line 18 through page 73, line 23;

Page 74, line 3 through page 74, line 9;

Page 75, line 16 through page 76, line 5;

Page 78, line 23 through page 79, line 24;

Page 82, line 19 through page 82, line 23;

Page 84, line 3 through page 85, line 3;

Page 86, line 18 through page 86, line 23;

Page 89, line 18 through page 89, line 22;

Page 90, line 15 through page 91, line 2;

Page 91, line 7 through page 92, line 4;

Page 97, line 5 through page 97, line 11;

Page 97, line 18 through page 97, line 20;

Page 98, line 20 through page 98, line 23;

Page 99, line 3 through page 99, line 13;

## VII. ESTIMATE OF TRIAL LENGTH

Plaintiff anticipates that he will present his case over the course of two and a half to three days and that the entire trial will lasts five trial days. Plaintiff's expert Guy Fried M.D. will be available to testify live on the morning of Monday, September 30, 2019. In the event that plaintiff's case in chief could be concluded prior to that time, plaintiff would respectfully request that Dr. Fried be permitted to testify out of order.

## VIII. ANTICIPATED LEGAL ISSUES

This case is a relatively straightforward claim brought under the FELA. Plaintiff does not anticipate any novel legal issues which would require a prior ruling by the Court.

In the event that the jury were to award the plaintiff any past lost wages, that portion of the verdict could be molded by the Court post-trial to reflect a reduction for Railroad Retirement Board taxes in accordance with the recent United States Supreme Court case, BNSF Ry. Co. v. Loos, 139 S. Ct. 893, 203 L. Ed. 2d 160 (2019).

                    Respectfully submitted,

                    COFFEY KAYE MYERS & OLLEY

BY:   */s/ Michael J. Olley*
                    MICHAEL J. OLLEY
                    LAWRENCE A. KATZ
                    Two Bala Plaza, Suite 718
                    Bala Cynwyd, PA  19004
                    610-668-9800
                    Attorneys for Plaintiff

Date:  August 29, 2019

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the date shown below, a copy of Plaintiff's Pretrial Memorandum was electronically filed using the Court's CM/ECF system which then will send notification of such filing and via first-class mail upon the following:

Yuri Brunetti, Esquire
Victoria Stolyar, Esquire
LANDMAN CORSI BALLAINE & FORD
One Penn Center, Suite 955
1617 JFK Boulevard
Philadelphia, PA 19103

COFFEY KAYE MYERS & OLLEY

BY: _____
MICHAEL J. OLLEY
Two Bala Plaza, Suite 718
Bala Cynwyd, PA 19004
610-668-9800
Attorneys for Plaintiff

Date: August 29, 2019